IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CRAIG SHIPP                                                                                          PLAINTIFF

v.                                              Case No. 4:18-cv-4017

STEVEN ARNOLD; DR.
MIMO LEMDJA; LENORA
TURNER; KINDALL SMITH;
and CORRECT CARE SOLUTIONS, LLC                                              DEFENDANTS

## ORDER

Before the Court is Plaintiff Craig Shipp's Motion to Substitute Expert(s). (ECF No. 80). Separate Defendant Steven Arnold has responded. (ECF No. 83). Separate Defendants Dr. Mimo Lemdja, Lenora Turner, Kindall Smith, and Correct Care Solutions, LLC (the "Medical Defendants") have also responded. (ECF No. 85). The Court finds the matter ripe for consideration.

### I. BACKGROUND

On March 26, 2018, Plaintiff, through counsel, filed an amended complaint in this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights when he was incarcerated in the Southwest Arkansas Community Correction Center in Texarkana, Arkansas. The Court's operative Final Scheduling Order sets out, in relevant part, that the parties' initial expert witness disclosures were due on March 24, 2019; that their rebuttal expert witness disclosures were due on May 10, 2019; and that the discovery deadline was June 24, 2019. The trial of this matter is currently scheduled for the week of October 21, 2019.

On June 7, 2019, the parties took the deposition of Plaintiff's jail and medical expert, Joseph William Wright, MD. On July 25, 2019, Dr. Wright's spouse informed Plaintiff's counsel that Dr. Wright passed away shortly after the date of his deposition. On August 1, 2019, Plaintiff filed the instant motion pursuant to Federal Rule of Civil Procedure 16(b), seeking to designate and substitute

one or more expert witnesses in place of Dr. Wright. Defendants oppose the motion.

## II. BACKGROUND

"In determining whether to allow a substitute expert, courts rely on Federal Rules of Civil Procedure 16(b) and 6(b) and treat the request for a substitute expert as a motion to modify the scheduling order." *Katon v. United States*, No. 5:16-CV-05023-JLV, 2019 WL 1254563, at *2 (D.S.D. Mar. 18, 2019). Rule 16(b) governs the issuance and modification of pretrial scheduling orders and applies when a party seeks to modify a scheduling order after the passage of a court-ordered deadline. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).

The Court's pretrial scheduling order controls the course of an action unless modified. *Id.* "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, if a party files for leave to modify outside of the court's scheduling order, the party must show good cause. *Sherman*, 532 F.3d at 716 (8th Cir. 2008). Prejudice to the nonmoving party resulting from modification of the scheduling order may also be considered, but courts generally "will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Id.* at 717; *see also Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (reasoning that a Rule 16(b) analysis need not proceed to or consider prejudice to the nonmovant if the movant has not shown diligence).

Plaintiff seeks to substitute expert witnesses after the expiration of the deadline for making initial expert witness disclosures. Thus, Plaintiff's request is governed by Rule 16(b). The Court will begin by determining whether Plaintiff has shown good cause to allow substitution of his expert witness. If so, the Court will then determine whether any other considerations warrant denying the motion.

### A. Good Cause

"What constitutes good cause sufficient to justify the modification of a scheduling order

necessarily varies with the circumstances of each case." 6A Charles Alan Wright et al. *Federal Practice and Procedure Civil*, § 1522.2 (3d ed.). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). Good cause generally requires a change in circumstance, law, or newly discovered facts. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012).

Plaintiff argues that Dr. Wright's death satisfies Rule 16(b)'s good cause requirement and Defendants do not argue otherwise. The Court agrees that Dr. Wright's death satisfies the good cause requirement, as it is well settled that the death of an expert witness presents good cause to designate a substitute expert witness. *See, e.g.*, *Crandall v. Hartford Cas. Ins. Co.*, No. CV 10-00127-REB, 2012 WL 6086598, at *3 (D. Idaho Dec. 6, 2012) ("If an expert is unavailable to testify at trial because of death, . . . that is a legitimate and appropriate reason for allowing a new expert to be named, even after deadlines for doing so have passed."); *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 20 (D. P.R. 2009) ("Death of an expert witness falls squarely within the category of circumstances that require a late disclosure.").

The Court is satisfied that Dr. Wright's death could not have been foreseen by Plaintiff and was not within his control. Plaintiff made reasonably diligent efforts to comply with the scheduling order and promptly notified Defendants and the Court after learning of Dr. Wright's death. Thus, the Court finds that Plaintiff has demonstrated good cause for his motion. However, the inquiry must proceed further, and the Court will now determine whether other considerations warrant denial of Plaintiff's request.

**B. Other Prejudicial Considerations**

Plaintiff's motion may be denied if Defendants would be unduly prejudiced if Plaintiff is allowed to substitute his expert witness. *Sherman*, 532 F.3d at 717. This issue is the primary fighting point of the motion.

Defendants argue that they would be prejudiced by allowing Plaintiff to substitute his expert

witness because the trial of this matter is currently set for the week of October 21, 2019, and the parties' dispositive motions are due on September 3, 2019. Defendants state that they have developed their litigation and dispositive motion strategies based on Dr. Wright's expert report and deposition testimony. Defendants suggest that, rather than allow substitution of experts, the Court should instead require that Plaintiff read Dr. Wright's deposition testimony into the record at trial. Plaintiff argues in turn that he would be prejudiced by having to rely solely on Dr. Wright's deposition testimony because a jury would find a live expert witness more compelling and credible than a dry recitation of an expert deposition transcript.

The Court will first address Defendants' argument regarding their litigation and dispositive motion strategies. Then, if necessary, the Court will separately address Defendants' arguments regarding the impending trial and their suggestion that the Court instead require that Plaintiff rely on Dr. Wright's deposition testimony at trial.

### 1. Defendants' Strategies

Defendants argue that they will suffer prejudice because they have based their litigation dispositive motion strategies on Dr. Wright's expert report and deposition testimony. However, the Court is unpersuaded. The purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a "better" expert who holds differing or more advantageous opinions than the first expert. *See Adams v. Cooper Indus., Inc.*, No. 03–476–JBC, 2007 WL 1075652, *3 (E.D. Ky. Apr. 5, 2007). To minimize prejudice to the opposing party, "courts generally limit the scope of the testimony that may be given by the substitute expert . . . to the subject matter and theories already espoused by the former expert." *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 1:04-CV-396, 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2010).

"This is not to say that the new expert must 'simply adopt the prior expert's conclusions verbatim—in effect, doing little more than authenticating and confirming the prior expert's

conclusions.' Rather, the substitute expert 'should have the opportunity to express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform.'" *Id.* (quoting *Morel*, 259 F.R.D. at 22).  Although any substitute expert's opinions need not be identical to Dr. Wright's opinions, they must be substantively similar and cannot be contrary to or inconsistent with Dr. Wright's opinions. *U.S. ex rel. Agate Steel, Inc. v. Jaynes Corp.*, No. 2:13-CV-01907-APG, 2015 WL 1546717, at *2 (D. Nev. Apr. 6, 2015).  Assuming that there is no meaningful change in the subject matter and theories expressed by Plaintiff's new expert, the Court finds that Defendants will suffer little prejudice with respect to the development of their litigation and dispositive motion strategies, as the new expert must hold substantially the same opinions as Dr. Wright.  If Plaintiff's substitute expert advances new theories or new subject matter, Defendants may file a motion to exclude that portion of the expert testimony. *See Lincoln Nat'l Life Ins. Co.*, 2010 WL 3892860, at *4.

The Court finds that any prejudice Defendants would suffer with respect to their litigation and motion strategies will be cured by the above-discussed restrictions, which will ensure that the new expert's opinions are materially the same as Dr. Wright's.  Accordingly, the Court finds that this argument presents no reason to deny substitution.

### 2. Impending Trial

Defendants also argue that they will suffer prejudice from substitution because of the impending trial date.  The Court believes that this argument is somewhat of an offshoot of the previous argument and that the contemplated harm is largely cured by the restrictions outlined in the above section, but the argument deserves attention nonetheless.

As previously stated, this case is currently set for trial on the week of October 21, 2019, just two months away.  Plaintiff's motion leaves the Court with the impression that he has not yet sought out and selected his substitute experts, as he requests leave to "seek a substitute expert, and potentially two experts due to the unique qualification of Dr. Wright." (ECF No. 80, p. 2).  Thus, Plaintiff will

have to locate one or more suitable replacement experts; retain their services; give them adequate time to review all pertinent information in this case, formulate their expert opinions, and author a new expert report; and then coordinate with Defendants to schedule one or more expert witness depositions. This hypothetical also presupposes that Defendants do not designate one or more new rebuttal experts, which would likely require even more time if they do.

The Court is doubtful that all of this can be accomplished between now and trial, which is only two months away. Rather, the Court believes that the current trial setting will most likely prove unworkable. To avoid prejudicing either side by giving them inadequate time to fully address Plaintiff's substitute expert and fashion their strategies accordingly, the Court will entertain a motion for a trial continuance if the parties determine that this process cannot be completed before October 21, 2019. *See TIC - The Indus. Co. Wyo. v. Factory Mut. Ins. Co.*, No. 4:10-cv-3153, 2012 WL 2830867, at *8 (D. Neb. July 10, 2012) (allowing substitution of an expert witness and stating that "the trial of this case is still two months away and, upon the parties' motion, could be continued again to permit a full and fair trial of all the issues"). If requested, a continuance would cure any prejudice to Defendants with respect to the impending trial by giving them ample time to investigate the opinions espoused by Plaintiff's new expert and depose the new expert on the same. Accordingly, the Court finds that this argument presents no reason to deny substitution.

### 3. Reliance on Deposition Transcript

Defendants also argue that, instead of allowing substitution, the Court should require that Plaintiff use Dr. Wright's deposition testimony at trial. Plaintiff argues that he would be prejudiced by this because the jury would be less receptive to the reading of a deposition transcript at trial instead of hearing a live witness.

A court may allow a party to use all or part of a deposition at trial in certain situations, including when the witness is dead. Fed. R. Civ. P. 32(a)(4). However, "[t]here is no question that oral testimony is the preferred form of testimonial evidence." *Manning v. Lockhart*, 623 F.2d 536, 539 (8th Cir.

1980).

Defendants correctly state that the Court could require that Plaintiff use Dr. Wright's deposition transcript at trial. However, the Court is mindful that oral testimony is preferred over the reading of a deposition transcript. In light of the Court's above ruling that substitution will be proper under Rule 16(b), the Court finds it unnecessary to require Plaintiff to utilize Dr. Wright's transcript at trial. Accordingly, the Court finds that this argument presents no reason to deny substitution.

### III.  CONCLUSION

For the above-stated reasons, the Court finds that Plaintiff's Motion to Substitute Expert(s) (ECF No. 80) should be and hereby is **GRANTED**. Plaintiff may designate one or more substitute experts to replace Dr. Wright, subject to the restrictions outlined in this order regarding the scope of the new experts' testimony and opinions. Defendants shall receive an opportunity to depose any substitute experts that are chosen. The parties may request a continuance of the current trial setting if the substitute experts cannot be chosen and deposed before trial.

**IT IS SO ORDERED**, this 27th day of August, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge