IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CRAIG SHIPP                                                                                              PLAINTIFF

v.                                            Case No. 4:18-cv-4017

STEVEN ARNOLD; DR.
MIMO LEMDJA; LENORA
TURNER; KINDALL SMITH;
and CORRECT CARE SOLUTIONS, LLC                                              DEFENDANTS

**ORDER**

Before the Court is an Expedited Motion to Exclude Expert filed by Separate Defendants Dr. Mimo Lemdja; Lenora Turner; Kindall Smith; and Correct Care Solutions, LLC (the "Medical Defendants"). (ECF No. 89). Separate Defendant Steven Arnold has filed a response in support of the motion. (ECF No. 90). Plaintiff Craig Shipp has filed a response in opposition to the motion. (ECF No. 91). The Medical Defendants have filed a reply. (ECF No. 93). The Court finds the matter ripe for consideration.

**I. BACKGROUND**

On March 26, 2018, Plaintiff, filed an amended complaint in this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights when he was incarcerated in the Southwest Arkansas Community Correction Center in Texarkana, Arkansas. Plaintiff, a diabetic, alleges that Defendants deprived him of his orthotic shoes and inserts for several weeks, which caused injury that ultimately required the amputation of his foot. Plaintiff asserts a federal claim of Eighth Amendment deliberate indifference and a state-law claim of negligence.

Plaintiff initially retained Dr. Joseph William Wright as his "jail and medical" expert.

(ECF No. 80). Dr. Wright was a licensed physician, board certified in otolaryngology,[1] who spent eleven years practicing in the field of correctional medicine, serving as the medical director of the El Paso County Criminal Justice Center in Colorado Springs, Colorado. (ECF No. 89-1, p. 2). On June 7, 2019, the parties deposed Dr. Wright. On July 25, 2019, Plaintiff learned that Dr. Wright passed away.

On August 1, 2019, Plaintiff filed a motion seeking leave to designate and substitute one or more expert witnesses to replace Dr. Wright. The Court granted that motion with the caveat that any new expert must hold substantively similar opinions that are not contrary to or inconsistent with Dr. Wright's opinions. (ECF No. 86, p. 5). The Court stated that Defendants could file a motion to exclude any portion of the replacement expert's testimony that concerned new opinions, theories, or subject matter.

On October 3, 2019, the Medical Defendants filed the instant motion, indicating that Plaintiff retained a nursing expert, Lori Roscoe. Roscoe's expert report reveals that she is an Advanced Practice Registered Nurse and is a Certified Healthcare Professional—Registered Nurse. She has worked in various roles in correctional healthcare since 1995 and is currently the principal of Correctional HealthCare Consultants LLC.

The Medical Defendants state that a review of Roscoe's expert report reveals multiple opinions that are either inconsistent with those of Dr. Wright's or concern subject matters that she is not qualified to opine on. Accordingly, they ask the Court to prohibit Roscoe from offering these opinions, effectively excluding her entirely as an expert. Separate Defendant Arnold joins in the motion, arguing for the same relief. Plaintiff opposes the motion.[2]

---

[1] Otolaryngology is a medical sub-specialty dealing with conditions of the ear, nose, and throat, and related structures of the head and neck.

[2] The Medical Defendants argue in their reply that Plaintiff's response is untimely and should not be considered, in

## II. DISCUSSION

The Medical Defendants state that Dr. Wright's expert report offered standard-of-care opinions only as to Separate Defendants Dr. Lemdja and Arnold. The Medical Defendants also state that at Dr. Wright's deposition, he offered a breach-of-standard-of-care opinion only as to Defendant Dr. Lemdja; that he specifically testified that Defendant Smith acted properly on February 5, 2016; that he testified that Defendant Turner was not at fault; and that he declined to opine as to the conduct of Correct Care Solutions, LLC because he had not been asked to evaluate that.

The Medical Defendants ask the Court to exclude Roscoe's opinions, for various reasons. First, they state that Roscoe is a nurse, not a doctor, and accordingly, she cannot opine on the standard of care for physicians.[3] Thus, they ask that the Court bar Roscoe from offering opinions related to Defendant Dr. Lemdja's medical judgment and treatment. Second, the Medical Defendants ask that the Court prevent Roscoe from offering nursing opinions as to any Defendant because those opinions either were not previously offered by Dr. Wright or otherwise conflict with Dr. Wright's opinions. Third, they ask the Court to prohibit Roscoe from offering "administrative" opinions as to Defendant Turner because those opinions either were not offered by Dr. Wright or otherwise conflict with his opinions. Fourth, they ask that the Court keep Roscoe from offering opinions as to Defendant Correct Care Solutions, LLC ("CCS") because Dr. Wright offered no opinion as to CCS and because Roscoe's opinion is that CCS failed to properly train its employees, which is not a claim in this case. Finally, the Medical Defendants ask the Court to exclude Roscoe

---

light of the fact that the instant motion was styled as an "expedited motion" and requested the Court to shorten Plaintiff's response time. However, the Court issued no such order and to the extent that the request to shorten Plaintiff's response time constitutes a formal motion, it has been rendered moot by Plaintiff's response.

[3] Plaintiff's response argues that Roscoe is, in fact, a doctor because she holds doctorate degrees in health care administration and nursing practice. Academic titles aside, however, there appears to be no dispute that Roscoe is not a licensed physician.

as an expert witness entirely because exclusion of all the above-listed opinions would effectively bar her from offering any of the opinions in her expert report.

Separate Defendant Arnold has joined in the Medical Defendants' motion. He states that Roscoe's opinions as to him are inconsistent with those expressed by Dr. Wright and, thus, she should not be allowed to offer those opinions. Accordingly, Separate Defendant Arnold likewise asks that the Court exclude Roscoe as an expert witness.

Plaintiff argues in response that Roscoe's opinions are substantially similar to those of Dr. Wright's. Specifically, Plaintiff argues that Dr. Wright specifically testified that his medical opinions were not limited to Defendant Dr. Lemdja. Plaintiff argues that Defendants' motion should be denied because they have time to cross-examine Roscoe on her opinions and obtain a rebuttal expert.

As the Court explained in its August 27, 2019, order, the purpose of allowing substitution of another expert was to put Plaintiff in the same position he would have been in but for Dr. Wright's death. It was not an opportunity to designate a "better" expert who holds differing or more advantageous opinions than Dr. Wright. To that end, the Court held that any new expert must hold substantially the same opinions as Dr. Wright and that Defendants could move to exclude any newly raised opinions, theories, or subject matter.

Bearing those instructions in mind, the Court turns to Roscoe's expert report. For illustrative purposes, the Medical Defendants submitted Roscoe's expert report, with annotations included at each section the Medical Defendants believe contain newly raised opinions. The Court will address each challenged opinion, grouped into categories for ease of access.[4]

---

[4] The Court expresses no opinion as to any part of Roscoe's expert report that was not designated by the Medical Defendants as containing a newly raised opinion.

**A. Dr. Lemdja**

Roscoe opines that Defendant Dr. Lemdja's medical decisions and treatment of Plaintiff breached the standard of correctional care because she failed to document certain encounters with Plaintiff and failed to take steps to acquire Plaintiff's orthotic shoes. There does not appear to be an issue as to whether Roscoe's opinions about Defendant Dr. Lemdja exceed the scope of Dr. Wright's opinions. Indeed, Roscoe's opinions resemble Dr. Wright's opinions on this subject. However, Defendants argue that Roscoe, a nurse, cannot testify as to the standard of care for physicians. Thus, they argue that she cannot offer expert opinions regarding Defendant Dr. Lemdja. Plaintiff argues in response that Roscoe served as a primary care provider at jails and provided healthcare to inmates and, therefore, she has identical experience to that of Defendant Dr. Lemdja. Consequently, Plaintiff argues that, as an experienced nurse practitioner and nurse, Roscoe is qualified to opine as to Defendant Dr. Lemdja.

An expert witness must be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Although a nurse may be an expert witness as to the standard of care for other nurses, it is not proper for a nurse to offer testimony on [an] issue . . . outside the area of their expertise." *Girlinghouse v. Capella Healthcare*, No. 6:15-cv-6008, 2016 WL 5539610, at *6 (W.D. Ark. Sept. 28, 2016) (quoting *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 10 n.1, 422 S.W.3d 116, 122 (2012)). The issue of causation lies outside nurses' area of expertise. *Id.* This is true for both Plaintiff's section 1983 deliberate indifference claim and the state-law negligence claim. *See Neal*, 2102 Ark. 282 10 n.1, 422 S.W.3d at 122 (stating that nurses cannot offer causation opinions in medical malpractice cases)[5]; *Earp v. Cty. of Tulare*, No. 1:11-

---
[5] The Arkansas Medical Malpractice Act "applies to all causes of action for medical injury" and "shall supersede any inconsistent provision of law." Ark. Code Ann. § 16-114-202. "Medical injury" is broadly defined to include "any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider." Ark. Code Ann. § 16-114-201(3). Thus, the Arkansas Medical Malpractice Act governs in place of

5

cv-0196-MJS PC, 2012 WL 1076217, at *4 (E.D. Cal. Mar. 29, 2012) (collecting cases holding that nurses cannot offer expert opinions on causation for section 1983 deliberate indifference claims).

Roscoe is an Advanced Practice Registered Nurse, not a physician. Her expert report makes this clear by stating that her "opinions and findings are made to a reasonable degree of *nursing . . .* certainty." (ECF No. 89-3, p. 12) (emphasis added). She may not offer expert opinions on the medical standard of care for physicians because she has not been educated and trained as such and, thus, that matter is outside her area of expertise. *See Grafton v. Bailey*, No. CV 13-2940, 2018 WL 2325410, at *5 (W.D. La. May 22, 2018) (excluding a nurse's expert opinions on the standard of care for physicians and the conduct of a defendant doctor in a section 1983 deliberate indifference case); *Girlinghouse*, 2016 WL 5539610, at *6. Moreover, to the extent that Roscoe opines that Defendant Dr. Lemdja's medical decisions or inaction proximately caused Plaintiff's injuries, she cannot do so because, as a nurse, the issue of causation lies outside her area of expertise. *Girlinghouse*, 2016 WL 5539610, at *6; *see also Earp*, 2012 WL 1076217, at *4. For these reasons, Roscoe cannot offer expert opinions related to Defendant Dr. Lemdja's medical decisions and treatment of Plaintiff.

**B. Nursing Opinions**

Roscoe offers several opinions related to the nursing standard of care. There can be no dispute that, as a nurse, she is qualified to opine on this subject. However, the Medical Defendants argue that Dr. Wright expressed no nursing opinions and, thus, Roscoe's opinions are newly raised

---

claims for ordinary negligence or other common-law torts when, like in this case, a plaintiff is seeking to recover for a "medical injury." *Dodson v. Charter Behavioral Health Sys. of Nw. Ark., Inc.*, 335 Ark. 96, 104, 983 S.W.2d 98, 102 (1998). When the Arkansas Medical Malpractice Act governs a matter falling outside of common knowledge, the plaintiff must prove the following with expert testimony: "(1) the standard of care for medical care providers in [the locality] or a similar locality, (2) a breach of that standard of care, and (3) that any breach was the proximate cause of the plaintiff's damages." *Robertson v. McCormick*, No. 6:17-cv-6064-SOH, 2019 WL 1997479, at *7 (W.D. Ark. May 6, 2019) (citing Ark. Code Ann. § 16-114-206(a)(1)-(3)).

and must be excluded. The Court need not answer the question of whether Dr. Wright expressed nursing opinions because each of Roscoe's challenged nursing opinions are newly raised.

Roscoe opines that "many different nurses" breached the nursing standard of care by failing to refer Plaintiff to sick call when he verbally communicated medical issues to them but did not submit the required sick-call form. (ECF No. 89-3, p. 9). She also opines that the same unspecified nurses violated the nursing standard of care by enlisting jail staff to inform them every time Plaintiff was seen not using a wheelchair he was given. There is no evidence before the Court showing that Dr. Wright expressed these opinions. Thus, Roscoe shall not be allowed to offer these nursing opinions.

Roscoe also opines that Defendant Turner violated the nursing standard of care by writing to Plaintiff on February 15, 2016 that he must be seen by medical staff to determine the need for his orthotic shoes. (ECF No. 89-3, p. 10). She also opines that Defendant Turner violated the nursing standard of care by failing to review Plaintiff's medical file to determine the medical necessity for the orthotic shoes. Plaintiff has not pointed the Court to evidence showing that Dr. Wright expressed these opinions. Thus, Roscoe cannot offer these opinions.

Roscoe further opines that Defendant Smith and LPN Brown violated the correctional standard of care by failing to advise their supervisors of Plaintiff's need for orthotic shoes, despite their knowledge of the same. To begin, the Court notes that LPN Brown is not a party to this case. Even if that itself is of no import, there is no evidence before the Court that Dr. Wright offered an opinion as to whether LPN Brown and Defendant Smith's actions, or inactions, breached a standard of care. In fact, Dr. Wright makes no mention of LPN Brown in any of the evidence submitted with the briefing of the instant motion and the only mention of Defendant Smith is when Dr. Wright testified that she acted properly on February 5, 2016. (ECF No. 89-2, p.2). Thus,

Roscoe cannot offer this opinion.

**C. Administrative Opinions**

Roscoe opines that Defendant Turner's failure to review Plaintiff's medical file to determine his need for orthotic shoes violated the administrative standard of care. (ECF No. 89-3, p. 10). Plaintiff has not pointed the Court to evidence showing that Dr. Wright expressed these opinions. Thus, Roscoe cannot offer this opinion.

Roscoe opines that Defendant Turner breached the correctional standard of care by failing to proactively take steps to obtain the orthotic shoes Plaintiff requested. However, there is no record evidence that Dr. Wright expressed this opinion. Rather, the record shows that Dr. Wright testified that it was not Defendant Turner's fault that she received late notice of Plaintiff's problem. (ECF No. 89-2, p. 3). Plaintiff has not pointed the Court to any testimony of Dr. Wright's stating otherwise. Thus, Roscoe will not be allowed to opine that Defendant Turner breached the correctional standard of care by failing to take steps to obtain the orthotic shoes.

Roscoe also opines that Defendant Turner breached the administrative standard of care by failing to monitor CCS staff and their provision of healthcare to inmates. Putting aside that Plaintiff has not asserted a failure-to-supervise claim in this case, Plaintiff has not pointed the Court to evidence showing that Dr. Wright expressed this opinion. Thus, Roscoe cannot offer this opinion.

Roscoe opines further that Defendant Turner and Regional Manager Hoffman—who is not a party to this case—breached some unspecified standard of care by failing to initiate a discussion with jail administration to establish a policy regarding whether the warden or medical administrative staff are responsible for approving prisoners' medical devices. Although Dr. Wright opined generally on the lack of such a policy and stated that Defendant Arnold was

responsible for creating the confusing chain-of-command issue, Plaintiff has not shown that Dr. Wright offered this opinion in association with either Defendant Turner or Hoffman. Therefore, Roscoe cannot offer this opinion as to Defendant Turner or Hoffman.

### D. Correct Care Solutions, LLC

Roscoe opines that CCS should have attempted to resolve the apparent confusion between medical administrative staff and Defendant Arnold as to whose responsibility it was to approve medical devices. Dr. Wright explicitly declined in his deposition to offer an opinion as to CCS's conduct, from a corporate standpoint. Although he testified generally about the apparent confusion between the warden and medical administrative staff as to who approved medical devices, nothing in the record shows that he opined that CCS itself was responsible or otherwise breached any standard of care. Accordingly, Roscoe may not offer an expert opinion on the issue of whether CCS breached a standard of care.

Roscoe also opines that CCS breached an administrative standard of care by failing to properly train and monitor its staff. Putting aside that Plaintiff does not assert a failure-to-train or failure-to-supervise claim in this case, Plaintiff has not pointed the Court to evidence showing that Dr. Wright held this opinion.[6] Accordingly, Roscoe will not be allowed to offer opinions on whether CCS failed to train and monitor its staff.

### E. Warden Arnold

Roscoe opines that Defendant Arnold breached the correctional standard of care on multiple occasions by failing to take steps to facilitate approval of the orthotic shoes Plaintiff

---

[6] The closest Dr. Wright came to offering such an opinion was when he was asked in his deposition if CCS should have trained its employees to report requests for medical devices to either the warden or healthcare administrator. However, Dr. Wright did not answer the question in the affirmative or negative, instead stating that the proper procedure would be to report the request to a physician or nurse practitioner, and that the proper procedure was not followed in Plaintiff's case. (ECF No. 90-1, p. 14). The Court finds this answer insufficient to establish that Dr. Wright believed CCS failed to adequately train its staff.

requested and because he improperly inserted himself into the process for approving Plaintiff's orthotic shoes. Defendant Arnold argues that this opinion falls outside the scope of Dr. Wright's prior opinions and, for the reasons discussed in the Medical Defendants' motion, Roscoe should be prevented from opining as to him.

The Court disagrees. Dr. Wright testified that, despite knowledge of Plaintiff's requests for the orthotic shoes, Defendant Arnold failed to arrange with medical administrative staff to facilitate approval of the orthotic shoes. Dr. Wright also expressed the opinion that Defendant Arnold wrongfully inserted himself in the process for approving medical devices, which should ordinarily rest with medical administrative staff, thereby creating a confusing chain-of-command issue and delaying Plaintiff's access to the orthotic shoes. Roscoe offers substantially the same opinions. The Court finds that Defendant Arnold's short and conclusory arguments to the contrary are unpersuasive. Therefore, Roscoe shall be allowed to offer these expert opinions as to Defendant Arnold.

### III.  CONCLUSION

For the above-stated reasons, the Court finds that the Medical Defendants' motion (ECF No. 89) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. Roscoe may give expert testimony regarding Defendant Arnold. She may not offer the other challenged expert opinions discussed in this order.

**IT IS SO ORDERED**, this 22nd day of October, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge