UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CRAIG SHIPP                                                                                          PLAINTIFF

v.                                          CASE NO. 4:18-CV-04017-SOH

KEVIN MURPHY, et al.                                                                       DEFENDANTS

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION TO EXCLUDE
EXPERT TESTIMONY OF DR. EARL PEEPLES [Doc. 102]**

**INTRODUCTION**

On February 1, 2016 Mr. Shipp entered the Southwest Arkansas Community Corrections Center to begin serving his plea bargain sentence. It is undisputed that Mr. Shipp did not have his orthotic inserts after he arrived at the facility. The shoes and inserts were worn by Mr. Shipp when he arrived at Crawford County to begin processing but ultimately given to his family until they were approved to be sent in. Mr. Shipp made multiple requests to the warden, after being informed by the medical staff that he would have to get approval from the warden before the shoes could be sent in by his family. The warden testified that it is medical's duty to approve the shoes. Despite multiple sick calls and visits to medical staff, the shoes were not approved until Dr. Lomax filled out the appropriate form on February 16, 2016. By this time, Mr. Shipp had already developed sores on both feet due to him being forced to wear Crocs instead of his orthotic shoes and inserts. After this approval by Dr. Lomax was finally filled out, the warden only then approved the orthotics and directed the health services administrator to contact the family to have the shoes sent in. Mr. Shipp's

sores unfortunately never healed and Plaintiff has expert testimony stating that these actions were ultimately the cause of his amputation of his foot.

Dr. Peeples has been designated by all Defendants to provide opinions. He was initially designated by Correct Care Solutions and the Correct Care Solutions employees, including Dr. Lemdja. He provided a report based upon that designation and was deposed on June 10, 2019. Subsequent to Plaintiff adding Dr. Roscoe, whose opinions were limited to administrative actions of Warden Arnold, Defendant Arnold later identified Dr. Peeples as a rebuttal witness. No report was provided identifying any additional opinions other than the initial report he wrote on behalf of the Correct Care Defendants. Therefore, Plaintiff is only aware of the opinions provided by the initial report and deposition testimony. Any additional opinions would be prohibited, as they were not disclosed within the Court's deadlines.

As this brief will demonstrate, Dr. Peeples has never worked as a correctional physician, many of his opinions are based on personal opinions and not standard of care, and he provides opinions on items that he admits that he is not an expert. Plaintiff would ask that any opinions based upon items that are outside of his expertise and experience and/or are based upon personal beliefs and not medical opinions should be excluded at trial.

## STANDARD OF REVIEW

"Courts must recognize that due to difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999 quoting *Daubert,* 509 U.S. at 595). As

a result the Supreme Court in *Daubert* emphasized the trial judge must serve as a "gate keeper" to prevent admission of expert testimony that is irrelevant or unreliable. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

*Daubert* and *Kumho* require 1) that "experts" be qualified as experts in the subject field, 2) that the expert's methodology is reliable, which requires a sound basis in the witness's knowledge and experience in the relevant discipline, and sound scientific reasoning and methodology, 3) that the data relied upon support the expert's conclusions, and 4) that there be a "fit" between the expert's opinion and the issue at hand. *Daubert*, 509 U.S. 559-591; *Kumho*, 529 U.S. at 147.

It is not sufficient for an expert to maintain that his opinions are reliable just because he says so. "Nothing either *Daubert* or the ... Rules of Evidence require the district court to admit opinion that is connected to the existing data only by the *ipsa dixit* of the expert." *Kumho*, *supra*, at 157. See also *Smith v. Virginia Commonwealth University*, 84 F.3d 672, 687 (4th Cir. 1996) ("An expert's opinion is inadmissible when it is based on assumptions that are speculative and not supported by the record."); *Ex Rel. Bryte v. American Household, Inc.*, 429 F.3d 469, 477 (4th Cir. 2005)("*Daubert* aims to prevent speculation.")

**ARGUMENT AND AUTHORITY**

**PROPOSITION I:** THE COURT SHOULD EXCLUDE ANY OPINION DR. PEEPLES PROVIDES ON CORRECTIONAL HEALTHCARE PROVIDERS DUE TO HIS UNRELIABLE METHODOLOGY AND DUE TO HIM BEING UNQUALIFIED, AS HE HAS NEVER SERVED AS A CORRECTIONAL HEALTHCARE PROVIDER.

Dr. Peeples admitted at his deposition that he has never worked as a physician in a correctional institute. [Ex. 1 - Dr. Peeples deposition, p. 9:25 to p. 10:2]. As part of his methodology in reaching opinions, Dr. Peeples testified that he did not review any policies and procedures [Ex. 1, p. 18:12-13] and did not review any of the testimony of the Defendants or other medical providers that had been taken in this case. [Ex. 1, p. 18:14-17]. Dr. Peeples provides the incorrect statement that Dr. Lemdja does not have any approval authority over medical goods for Mr. Shipp or other prisoners. [Ex. 1, p. 17:24 through p. 18:1]. This is a direct contradiction to the customs and procedures identified by Health Services Administrator Lenora Philson. [Ex. 2, Ms. Philson deposition, p. 22:13 through p. 23:1].

Correctional health care providers are not the same as general practitioners or specialists outside of the correctional system. This is because there are many additional administrative policies and procedures and correctional policies and procedures that would restrict certain decisions or put additional requirements for medical decisions to be effective. Ms. Philson's testimony that the appropriate form must be filled out in order for a medical device to be approved shows a policy and procedure that Dr. Lemdja had to follow in order to effectively address Mr. Shipp's diabetic foot condition. Dr. Peeples, who is willing testify that her actions were completely appropriate, does not accurately articulate this policy and procedure, has never worked in a correctional facility to dispute this policy and procedure, and made no effort to familiarize himself with the Southwest Arkansas Community

Correction Center's and Correct Care Solutions' policies and procedures regarding health care to inmates. Accordingly, his methodology is improper in assessing the care provided to Mr. Shipp by Dr. Lemdja and the Correct Care Solutions staff. Additionally, he has no experience and/or expertise in being a correctional health care provider and therefore cannot provide opinions on those subjects as well. Accordingly, any opinions based upon the health care provided to Mr. Shipp by Correct Care Solutions' staff and/or Correct Care Solutions' doctors must be excluded at trial, and be excluded for any purposes of motions for summary judgment.

**PROPOSITION II:** **THIS COURT SHOULD EXCLUDE DR. PEEPLES' OPINIONS THAT ARE CUMULATIVE TO FELLOW EXPERT DR. STIEVE, WHO IS ALSO THE REGIONAL MEDICAL DIRECTOR OF CORRECT CARE SOLUTIONS, NOW KNOWN AS WELLPATH**

This court should exclude Dr. Peeples' opinions that are cumulative to fellow expert Dr. Stieve, who is also the regional medical director of Correct Care Solutions, now known as Wellpath, [Ex. 3 - Dr. Stieve deposition, p. 5:10-23] who was specifically identified to provide opinions on the defendant nurses and/or doctors at SWACCC related to Mr. Shipp's care. [Ex. 4 - Dr. Stieve Expert Report Disclosure]. Many opinions by the unqualified Dr. Peeples contradict Dr. Stieve's opinion and therefore should be excluded as being inaccurate and cumulative to Dr. Stieve. Dr. Peeples states that the Correct Care staff have no authority over the prisoners' restrictions. [Ex. 1, p. 29:17 through p. 30:11]. Instead, he believes it up to Mr. Shipp to provide his own restriction limitation without the appropriate doctor's

approval. [Ex. 1, p. 29:1-15 and p. 56:21 through p. 57:4]. This is in contrast to Dr. Stieve, who testified that the restrictions must be put in place by the medical staff for the correctional staff to know that the inmates have certain restrictions. [Ex. 3, p. 18:1-16]. Dr. Peeples testified that Mr. Shipp should have put in a sick call every day [Ex. 1, p. 57:8-10]. In contrast, Dr. Stieve testified that an inmate is not required to put in a sick call every day and that Mr. Shipp's requests were sufficient. [Ex. 3, p. 27:5 through p. 28:16 and p. 34:17-23]. Dr. Peeples states that Dr. Lemdja's actions were appropriate. [Ex. 1, p. 16:6-18]. Dr. Stieve, as a regional medical director and fellow correctional health care provider, contradicts Dr. Peeples and admits that **Dr. Lemdja violated the standard of care** by not off loading Mr. Shipp's feet and writing the appropriate restrictions. [Ex. 3, p. 30:1-6 and p. 29:13 through p. 31:22]. These examples show that Dr. Peeples is willing to provide opinion not based on appropriate experience, understanding or knowledge of the correctional health care facility and its providers. Furthermore, these are all opinions that are cumulative of Dr. Stieve and, therefore, should be prohibited from trial for either being unreliable, lack of methodology or cumulative to the other expert.

**PROPOSITION III: ANY OPINIONS RELATED TO CAUSATION BASED UPON PERSONAL RECOMMENDATIONS AND NOT MEDICAL STANDARD OF CARE SHOULD BE EXCLUDED.**

Dr. Peeples admits that no treating physicians for Mr. Shipp recommended amputation prior to him developing sores at the SWACCC facility. [Ex. 1, p. 11:22 through p. 12:2 and p. 13:3-9]. He admits that Mr. Shipp did not have any sores when he entered the facility. [Ex.

6

1, p. 13:18-22 and p. 26:25 through p. 28:6]. Furthermore, he does not identify any standard of care where an amputation would have been required prior to Mr. Shipp entering the facility in February 2016. [Ex. 1, p. 11-12 and p. 51:22 through p. 52:23]. In order to defend the Defendants' actions and limit their liability, Dr. Peeples can only provide a "personal recommendation" that he may have offered Mr. Shipp if he was his treating physician back in 2013. [Ex. 1, p. 11-12 and p. 51:22 through p. 52:23]. In his opinions he agrees that this is only an elective procedure and not a medically required procedure. He even admits that he does not provide any opinions that a doctor should have amputated back in 2013, which is his personal opinion. [Ex. 1, p. 52:20-23]. He even agrees that Mr. Shipp was never provided any discussion of this elective procedure and never refused any recommendation for an elective amputation. [Ex. 1, p. 14:8-11].

     Dr. Peeples' statements related to his personal opinions as to what elective procedures could have been offered to Mr. Shipp are not appropriate for a jury to hear. A jury could confuse this with the standard of care that Mr. Shipp should have received for care prior to entering the facility. This shifts the blame to his doctors prior to 2016, who had no role in the sores developing at the facility and never once recommended amputation to Mr. Shipp prior to entering the faciliy. A personal opinion on an elective procedure is not a medical standard of care opinion that would cut off causation liability. Therefore, any and all opinions related to causation for any actions prior to February 2016 should be excluded.

**PROPOSITION IV:   DR. PEEPLES' OPINIONS BASED UPON THE FAMILY'S ACTIONS SHOULD BE EXCLUDED AT TRIAL.**

The record shows that the orthotics were not approved and the family was not notified to send in the shoes with the warden's approval until after the warden e-mailed Health Services Administrator Lenora Philson on February 16 asking her to notify the family. [Ex. 2, p. 33-36; Ex. 5 - E-mail]. Dr. Peeples did not evaluate this statement, as he did not evaluate any depositions and only reviewed medical records. [Ex. 1, p. 18:14-19]. Therefore, his methodology in evaluating the family's actions is insufficient and allowing an orthopedic doctor to provide opinions on what a family should do when a family member is in a correctional facility is outside his scope of expertise. This is especially true since Dr. Peeples has no experience in correctional health care. Accordingly, any opinions elicited by Dr. Peeples related to what the family could have done should be excluded at trial. [Ex. 1, p. 33:10-25 and p. 34:1-15].

**PROPOSITION V:   ANY TESTIMONY RELATED TO ADMINISTRATIVE ACTIONS SHOULD BE EXCLUDED.**

Dr. Peeples admitted that he is not providing any opinions based upon his constitutional duty [Ex. 1, p. 8:2-9] and admits that he has no opinions on administrative actions. [Ex. 1, p. 22:19-24]. Defendant Arnold listed Dr. Peeples as a rebuttal expert to Lori Roscoe. This Court has ruled that Lori Roscoe's opinions are limited to Warden Arnold and the administrator actions. Therefore, Plaintiff would ask that Defendant Arnold's listing of Dr. Peeples as a rebuttal expert be stricken.

**PROPOSITION VI:** **OPINIONS RELATED TO A1C LEVELS**

Dr. Peeples identifies Mr. Shipp as being non-compliant due to his A1C levels as being an indication that he has not taken control of his diabetes. [Ex. 1, p. 14:15 through p. 15:11]. He agrees he does not know the difference between whether an A1C below 8 and above 7 is considered an appropriate A1C for a Type 2 diabetic. [Ex. 1, p. 15:7-11]. He also admits that he does not have the expertise to determine whether an A1C can rise even if you are following the appropriate dietary restrictions for a Type 2 diabetic. [Ex. 1, p. 61:3-15]. Therefore, Dr. Peeples is not qualified to provide opinions on or related to A1C levels for Mr. Shipp. As such, his opinion that Mr. Shipp was not making appropriate efforts to control his diabetic condition should be excluded.

WHEREFORE, based on the foregoing, Plaintiff would ask that the above referenced opinions be prohibited at trial, prohibited from being considered at the dispositive motion stage and prohibited from being mentioned in the presence of a jury.

    Respectfully submitted,
    WALSH & FRANSEEN

    /s/ Derek S. Franseen
    Micky Walsh, OBA No. 9327, *Pro hac vice*
    Derek S. Franseen, OBA No. 30557, *Pro hac vice*
    200 E. 10th Street Plaza
    Edmond, OK 73034
    p. (405) 843-7600 / f. (405) 606-7050
    -and-
    Ronald W. Metcalf, AR Bar No. 73084
    Ronald W. Metcalf, PA
    P.O. Box 1844
    Ft. Smith, AR 72902
    p. (479) 783-0239 / f. (479) 783-6754
    *Counsel for Plaintiff*

## CERTIFICATE OF ELECTRONIC FILING & NOTICE

This is to certify that on this 7th day of February, 2020, I electronically transmitted this document to the Clerk of the Court using the ECF system for filing, which shall send notification to anyone registered in this case to receive such filings.

          /s/ Derek S. Franseen
          Derek S. Franseen