1

```
          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF ARKANSAS
               TEXARKANA DIVISION

CRAIG SHIPP                                PLAINTIFF

          CASE NO. 4:18-CV-04017-SOH

v.


KIMBERLY HOFFMAN, et al.                   DEFENDANTS
```

**********************************************

```
              ORAL DEPOSITION
                    OF
              MELISSA STONER
               MARCH 29, 2019
                  VOLUME 1
```

**********************************************

ORAL DEPOSITION OF MELISSA STONER, produced as a witness at the instance of the PLAINTIFF, CRAIG SHIPP, and duly sworn, was taken in the above-styled and numbered cause on the 29th day of March, 2019, from 11:02 a.m. to 12:02 p.m., before LEICA TURNER, a Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the offices of Leigh & Associates Court Reporting, 3930 Galleria Oaks Drive, Suite 159, Texarkana, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

```
 1                 A P P E A R A N C E S
 2   FOR THE PLAINTIFF CRAIG SHIPP:
 3       MR. DEREK S. FRANSEEN
             WALSH & FRANSEEN
 4           200 East 10th Street Plaza
             Edmond, Oklahoma  73034
 5           Phone:  405.843.7600
             Fax:  405.606.7050
 6           dfranseen@walshlawok.com
 7   FOR THE MEDICAL DEFENDANTS:
 8       MS. MICHELLE BANKS ODUM
             HUMPHRIES, ODUM & EUBANKS
 9           1901 Broadway Street
             Little Rock, Arkansas  72206
10           Phone:  501.420.1776
             michelle@humphrieslaw.net
11
     FOR THE ADC DEFENDANTS:
12
         MS. ROSALYN MIDDLETON
13           ASSISTANT ATTORNEY GENERAL
             CIVIL DEPARTMENT
14           323 Center Street
             Suite 200
15           Little Rock, Arkansas  72201
             Phone:  501.682.8122
16           Fax:  501.682.2591
             rosalyn.middleton@arkansasag.gov
17
18
19   ALSO PRESENT:
20   Ms. Diane Cunningham
21
22
23
24
25
```

```
 1                        I N D E X
 2   WITNESS:  MELISSA STONER
 3                                                       PAGE
 4   Appearances .....................................     2
 5
 6   Changes and Signature ...........................    42
 7   Reporter's Certificates .........................    44
 8
 9   Examination by Mr. Franseen .....................     4
10   Examination by Mr. Odum .........................    37
11   Examination by Mr. Franseen .....................    38
12
13
14
15                    E X H I B I T   I N D E X
16   EXHIBIT                                             PAGE
     NO.        DESCRIPTION                              MARKED
17
     1          ........................................   24
18              Medical Records
                (Bates CCS 536 - CCS 590)
19
20
21
22
23
24
25
```

```
 1                      P R O C E E D I N G S
 2           (All parties present have hereby waived the
 3                  introductory reading by the
 4       deposition officer as required by Rule 30(b)(5).)
 5                         MELISSA STONER,
 6   having been first duly cautioned and sworn, testified as
 7   follows:
 8                           EXAMINATION
 9   BY MR. FRANSEEN:
10        Q.   Please state your full name.
11        A.   Melissa Joyce Stoner.
12        Q.   Have you gone by any other names?
13        A.   Melissa Ross and Melissa Stewart.
14        Q.   How do you spell Stewart?
15        A.   S-t-e-w-a-r-t.
16        Q.   I guess what was your birth last name?
17        A.   Stewart.
18        Q.   Okay.  And do you know what year you became
19   Ross?
20        A.   2 -- no, not 2 -- 1991.
21        Q.   Was that due to marriage?
22        A.   Yes.
23        Q.   When did you become Stoner?
24        A.   1996.
25        Q.   And was that due to marriage?
```

```
 1      Q.   When did you next return to SWACC?
 2      A.   In 2012.
 3      Q.   Did you work at any facilities that were
 4   correctional or jail settings?
 5      A.   Yes, sir, I worked at Telford from 2006 when
 6   we moved back to 2011.
 7      Q.   And is that Telford?
 8      A.   T-e-l-f-o-r-d.
 9      Q.   Where is Telford at?
10      A.   In New Boston, Texas.
11      Q.   Do you remember how they handled their medical
12   device approval?
13      A.   Telford is totally different from CCS.
14      Q.   How would they do it?
15      A.   Medical would prescribe it.  It's a prison
16   setting.  It's like full murderers and rapists.  Totally
17   different setting.
18      Q.   Do you know if there's any approval needed by
19   the warden?
20      A.   Not to my knowledge.  I don't know.
21      Q.   So then you returned to SWACC.  Since 2012
22   until now, are you aware of any changes in that
23   procedure as far as approving medical devices by
24   SWACC?
25      A.   No, sir.
```

| | | |
|---|---|---|
| 1 | Q. | Are you still employed there? |
| 2 | A. | No, sir. |
| 3 | Q. | When did you last work at SWACC? |
| 4 | A. | In July of 2016. |
| 5 | Q. | And why did your employment end there? |
| 6 | A. | They accused me of making comments about a |
| 7 | case or a patient on social media which I did not. | |
| 8 | Q. | Did you make any comments on social media |
| 9 | about any work-related issue there? | |
| 10 | A. | I made a comment about doing a head-to-toe |
| 11 | assessment and getting yelled at for it. | |
| 12 | Q. | Did you notify -- identify who the patient was |
| 13 | or anything? | |
| 14 | A. | No, sir, I did not. |
| 15 | Q. | Were you the nurse who did the head-to-toe |
| 16 | assessment? | |
| 17 | A. | Yes, sir, I was. |
| 18 | Q. | Do you remember why you were yelled at for |
| 19 | doing a head-to-toe assessment? | |
| 20 | A. | She was concerned about his pupillary reaction |
| 21 | and that he had fallen on my shift. I went in to assess | |
| 22 | him and security would not allow me to. And that is in | |
| 23 | my note. And that there were no changes in his | |
| 24 | condition after he fell and that I should have informed | |
| 25 | the doctor. | |

1  Q. I'm going to hand you -- it was Exhibit 1 in
2 Ms. Smith's deposition and it will stay Exhibit 1 for
3 yours. It is CCS 536 through CCS 590. There on the
4 first page, is there an encounter there by you?
5  A. Yes, sir.
6  Q. In that encounter, where is the drainage that
7 you're describing?
8  A. On the sock and bandage.
9  Q. Is that a sign of infection?
10  A. Not necessarily.
11  Q. What is it a sign of?
12  A. It's serosanguinal drainage which means it's
13 blood-tinged. It's just blood-tinged.
14  Q. On something like that, do you notify the
15 doctor?
16  A. No, sir. It's expected.
17  Q. Let's go to CCS 541. Is there an encounter
18 there by you?
19  A. Yes, sir.
20  Q. What is -- is this a sick call encounter?
21  A. No, sir.
22  Q. What's this?
23  A. Treatment call.
24  Q. Did he go to medical for this?
25  A. Yes, sir.

1   Q.  It's just kind of just part of his treatment
2   that's already been prescribed?
3   A.  Yes, sir.
4   Q.  If someone goes to a treatment call, are they
5   allowed to report something to you that can initiate
6   being seen by a doctor?
7   A.  Not without a sick call.
8   Q.  Did you refer him to a doctor on this case?
9   A.  Yes, sir.
10  Q.  So there's nothing preventing you from making
11  that decision to refer somebody to a doctor on a
12  treatment call?
13  A.  Well, if it's for an ongoing thing, I can
14  refer him to the doctor, but if it's something new, he
15  has to place a sick call.  This is ongoing.
16  Q.  Per the procedures?
17  A.  Yes, sir.  It was a new diabetic ulcer.
18  Q.  So since the 5th when he was first seen by
19  Dr. Lemdja, a second ulcer on his other foot started
20  during that time period?
21  A.  Yes, sir.  Well, it was a blister at the time.
22  Q.  Do blisters turn into sores and ulcers?
23  A.  They can, yes, sir.
24  Q.  Do you agree it's important to -- for a
25  diabetic to have their orthotic device in order to help

1 prevent a blister or sore from potentially forming?

2 A. Yes, sir.

3 Q. Preventing it from initially forming is the
4 best way to prevent a sore from developing?

5 A. Yes, sir.

6 Q. And if a sore develops, do you agree that it
7 can potentially lead to an amputation?

8 A. If it does not heal, yes, sir.

9 Q. Prior to February 5th, that encounter we
10 already talked about, did you have any other interaction
11 with Mr. Shipp prior to that?

12 A. Just at pill call and treatment calls. I
13 didn't do any sick calls on him.

14 Q. You didn't evaluate his feet or anything?

15 A. Just at treatment call.

16 Q. Okay. But prior to February 5th, if that's
17 the first encounter with your name on it, would that
18 have been the first time you observed him?

19 A. I'm not -- I don't understand.

20 Q. Okay.

21 A. Rephrase it a little bit.

22 Q. If there's nothing documented with you prior
23 to February 5th, do you believe that you had any
24 treatment encounters with him?

25 A. No, sir.

```
1              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF ARKANSAS
2                   TEXARKANA DIVISION

3    CRAIG SHIPP                              PLAINTIFF

4              CASE NO. 4:18-CV-04017-SOH

5    v.

6
     KIMBERLY HOFFMAN, et al.               DEFENDANTS
7

8    *********************************************

9              REPORTER'S CERTIFICATION
                   ORAL DEPOSITION
10                       OF
                   MELISSA STONER
11                 MARCH 29, 2019
                      VOLUME 1
12

13   *********************************************

14             I, LEICA TURNER, Certified Shorthand Reporter

15   in and for the State of Texas, do hereby certify to the

16   following:

17             That the witness, MELISSA STONER, was duly

18   sworn by the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21             I further certify that pursuant to FRCP Rule

22   30(f)(1) that the signature of the deponent:

23        ___X___ was requested by the deponent or a

24   party before the completion of the deposition and is to

25   be returned within 30 days from the date of receipt of
```

1  the transcript.  If returned, the attached Changes and
2  Signature Page contains any changes and the reasons
3  therefor;
4  _____ was not requested by the deponent
5  or a party before the completion of the deposition.
6  I further certify that I am neither counsel
7  for, related to, nor employed by any of the parties or
8  attorneys to the action in with this proceeding was
9  taken.  Further, I am not a relative or employee of any
10 attorney or record in this cause, nor am I financially
11 or otherwise interested in the outcome of the action.
12 Subscribed and sworn to on this the 15th day
13 of April, 2019.

*[Signature: Leica Turner]*

LEICA TURNER, Texas CSR #5622
Expiration Date:  12/31/19
Firm Registration No.: 684
LEIGH & ASSOCIATES
COURT REPORTING AND VIDEO
911 West Loop 281, Suite 211
Longview, Texas 75604
Telephone: (877) 790-3376
Facsimile: (877) 790-3377
www.leighreporting.com