```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
 2                  TEXARKANA DIVISION

 3   CRAIG SHIPP                              PLAINTIFF

 4             CASE NO. 4:18-CV-04017-SOH

 5   v.

 6
     KIMBERLY HOFFMAN, et al.                 DEFENDANTS
 7

 8
            **********************************************
 9
                       ORAL DEPOSITION
10                          OF
                       MELISSA STONER
11                    MARCH 29, 2019
                         VOLUME 1
12
            **********************************************
13

14

15       ORAL DEPOSITION OF MELISSA STONER, produced as a

16   witness at the instance of the PLAINTIFF, CRAIG SHIPP,

17   and duly sworn, was taken in the above-styled and

18   numbered cause on the 29th day of March, 2019, from

19   11:02 a.m. to 12:02 p.m., before LEICA TURNER, a

20   Certified Shorthand Reporter in and for the State of

21   Texas, reported by machine shorthand, at the offices of

22   Leigh & Associates Court Reporting, 3930 Galleria Oaks

23   Drive, Suite 159, Texarkana, Texas, pursuant to the

24   Federal Rules of Civil Procedure and the provisions

25   stated on the record or attached hereto.
```

ORIGINAL

EXHIBIT K

```
 1      A.   Yes, I apologize.
 2      Q.   That's all right.
 3           MS. ODUM:  I told y'all.
 4           MR. FRANSEEN:  I'm guilty of it myself
 5  time and time again in depositions.
 6      Q.   Have you ever been arrested?
 7      A.   Yes, sir.
 8      Q.   Were you ever convicted from those arrests?
 9      A.   I got a DWI when I was 21 years old.
10      Q.   Anything else?
11      A.   No, sir.
12      Q.   Do you have any specific memory of Craig
13  Shipp?
14      A.   Not specific.
15      Q.   As we sit here today, you can't, without
16  reviewing any records, just say I remember this
17  encounter?
18      A.   Well, I work night shift so I did not see him
19  except on rare occasions.
20      Q.   On rare occasions you saw him but does
21  anything stick out in your mind as far as him being
22  noncompliant?
23      A.   Yes, sir.
24      Q.   What do you recall?
25      A.   He would come to the pill window several times
```

without his wheelchair, argue with me about why he didn't have it. When I tried to tell him the importance of him being in the wheelchair, he would just shrug his shoulders or tell me that his shoulder hurt, it hurt his shoulder to -- and I would tell him would you rather lose your foot or have a little shoulder pain, you know. It was his decision.

Q. You would counsel him on that?
A. Yes, sir.
Q. Did you ever report to doctors the shoulder pain?
A. No, sir, he would have had to have dropped a sick call.
Q. It's your understanding he has to initiate that?
A. Yes, sir, he does.
Q. Do you know whether he initiated that?
A. I do not. I don't recall a sick call for his shoulder pain. I picked up the sick calls at night and triaged them.
Q. At this pill encounter, if he would have reported to you three times that he had shoulder pain, would you have reported it then to a doctor?
A. Not without a sick call. It's policy that they have to drop a sick call to be evaluated by a nurse

1 that a patient or inmate at SWACC in a wheelchair can't
2 have another inmate or staff member push them?
3     A.   That's a SWACC policy. I'm not familiar with
4 it. I mean, I didn't tell him they couldn't push him
5 around if I saw it so...
6     Q.   Did you counsel him on the use of the
7 wheelchair?
8     A.   Yes, sir.
9     Q.   Did he notify you that his shoulder hurt?
10     A.   He -- it says here the nurse stated that the
11 wheelchair was more important due to the condition of
12 his right foot and he stated he wasn't going to use his
13 wheelchair. Oh, before that, when asked why, he stated
14 that it hurts his shoulder.
15     Q.   Now, would this be considered one of the three
16 if you're documenting it in his medical?
17     A.   It's not a sick call. Just because he
18 complains about it three times does not mean we go to
19 the doctor. I cannot put anybody in front of the doctor
20 without showing a sick call showing he needs to be seen
21 by a doctor.
22     Q.   So complaints don't count towards the three?
23     A.   Not without a sick call, sir.
24     Q.   Let's go to CCS 570. Can you read the last
25 two sentences there?

1      A.     Starting at "nurse then explained"?

2      Q.     Yes.

3      A.     "Nurse then explained to resident that if he could not feel the cast on his foot, it would be in his best interest to use the wheelchair to prevent any more damage/injury to his foot. Resident stated you have a point, but still ambulates without wheelchair."

8      Q.     When you say he says you have a point, does he seem to be agreeing with you?

10     A.     In a way, yes, sir.

11     Q.     And you say he's still ambulating without a wheelchair. Could he have snapped his finger and have a wheelchair appear next to him?

14     A.     He had a bad habit of pushing the wheelchair to medical, not being in it.

16     Q.     Is that what you observed here?

17     A.     I don't recall. I just know that he was not in his wheelchair.

19     Q.     What's the first sentence there?

20     A.     "Resident here at pill window again without his wheelchair."

22     Q.     So when you described that he's still ambulating without wheelchair, is that from the pill window?

25     A.     That's noncompliant. This is not the first

```
 1                UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
 2                    TEXARKANA DIVISION

 3   CRAIG SHIPP                              PLAINTIFF

 4            CASE NO. 4:18-CV-04017-SOH

 5   v.

 6
     KIMBERLY HOFFMAN, et al.               DEFENDANTS
 7

 8   ************************************************

 9              REPORTER'S CERTIFICATION
                    ORAL DEPOSITION
10                        OF
                    MELISSA STONER
11                  MARCH 29, 2019
                      VOLUME 1
12
     ************************************************
13

14        I, LEICA TURNER, Certified Shorthand Reporter

15   in and for the State of Texas, do hereby certify to the

16   following:

17        That the witness, MELISSA STONER, was duly

18   sworn by the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21        I further certify that pursuant to FRCP Rule

22   30(f)(1) that the signature of the deponent:

23        ____X____ was requested by the deponent or a

24   party before the completion of the deposition and is to

25   be returned within 30 days from the date of receipt of
```

1  the transcript.  If returned, the attached Changes and
2  Signature Page contains any changes and the reasons
3  therefor;
4            _____ was not requested by the deponent
5  or a party before the completion of the deposition.
6            I further certify that I am neither counsel
7  for, related to, nor employed by any of the parties or
8  attorneys to the action in with this proceeding was
9  taken.  Further, I am not a relative or employee of any
10 attorney or record in this cause, nor am I financially
11 or otherwise interested in the outcome of the action.
12           Subscribed and sworn to on this the 15th day
13 of April, 2019.
14
15
16           *[signature: Leica Turner]*
17           _____
18           LEICA TURNER, Texas CSR #5622
            Expiration Date:  12/31/19
19          Firm Registration No.: 684
            LEIGH & ASSOCIATES
20          COURT REPORTING AND VIDEO
            911 West Loop 281, Suite 211
21          Longview, Texas 75604
            Telephone: (877) 790-3376
22          Facsimile: (877) 790-3377
            www.leighreporting.com
23
24
25