IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CRAIG SHIPP                                                                                          PLAINTIFF

v.                                         Case No. 4:18-cv-4017

STEVEN ARNOLD; DR.
MIMO LEMDJA; LENORA
TURNER; KINDALL SMITH;
and CORRECT CARE SOLUTIONS, LLC                                              DEFENDANTS

## ORDER

Before the Court is Plaintiff Craig Shipp's Motion to Exclude Expert Testimony of Dr. Earl Peeples. (ECF No. 102). Separate Defendants Dr. Mimo Lemdja, Lenora Turner, Kindall Smith, and Correct Care Solutions, LLC (the "Medical Defendants") have responded. (ECF No. 117). Separate Defendant Steven Arnold has not responded, and his time to do so has passed. *See* Local Rule 7.2(b). The Court finds that the matter is ripe for consideration.

### I. BACKGROUND

On March 26, 2018, Plaintiff, through counsel, filed an amended complaint in this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights when he was incarcerated in the Southwest Arkansas Community Correction Center in Texarkana, Arkansas. Plaintiff, a diabetic, alleges that Defendants deprived him of his orthotic shoes and inserts for several weeks, which caused injury that ultimately required the amputation of his foot. Plaintiff asserts a federal claim of Eighth Amendment deliberate indifference and a state-law claim of negligence.

Defendants have designated Dr. Earl Peeples as an orthopedic expert. Plaintiff moves to exclude Dr. Peeples' expert opinions at trial because they are based on an unreliable methodology, because he is unqualified to render some of the opinions, and because some of the opinions are cumulative of another defense expert witness's opinions. Plaintiff specifically asks that the Court

exclude Dr. Peeples' expert opinions in six categories: (1) any opinion on correctional healthcare providers; (2) opinions that are cumulative to Dr. Jeffrey Stieve's opinions; (3) causation opinions that are based on personal recommendations instead of a medical standard of care; (4) opinions related to Plaintiff's family; (5) opinions related to administrative actions; and (6) opinions related to A1C levels. The Medical Defendants largely oppose the motion.

## II. DISCUSSION

The Court's starting point for determining the admissibility of expert testimony is Federal Rule of Evidence 702, which provides a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal citations and quotations omitted). In *Daubert*, the United States Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-93 (1993).

When assessing the reliability of expert testimony, *Daubert* suggests that the Court consider the following non-exhaustive factors: (1) whether the concept can and has been tested; (2) whether the concept has been subject to peer review; (3) what the known rate of error is; and (4) whether the concept is generally accepted by the relevant scientific community. *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995). The inquiry as to the reliability and relevance of the testimony is a flexible one designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Expert testimony is inadmissible only if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000). When analyzing an expert's testimony, the Court must focus on the principles and methodology employed by the expert, and not on the conclusions generated by the expert. *Daubert*, 509 U.S. at 594. In other words, the Court's role is not to determine whether an expert's opinion is correct; it is an expert witness's methodology, rather than his conclusions, that is the primary concern of Rule 702. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). "[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the scientist's methods, if there are good grounds for the expert's conclusion[,] it should be admitted." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Thus, "Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (internal citation and quotation omitted). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner*, 259 F.3d at 929-30.

With this framework in mind, the Court will now take up Plaintiff's motion by addressing the six delineated categories of expert opinions he seeks to exclude.

**A. Expert Opinions on Correctional Healthcare Providers**

Plaintiff asks the Court to exclude any opinion from Dr. Peeples on correctional healthcare providers because those opinions are based on an unreliable methodology and because he is unqualified to render such an opinion. The Medical Defendants respond that Dr. Peeples is not presented as an expert on correctional medicine and will not be asked to opine on that area. Accordingly, Plaintiff's motion should be granted to the extent that it seeks exclusion of Dr. Peeples' expert opinions on

correctional healthcare providers.

**B. Cumulative Opinions**

Plaintiff asks the Court to exclude certain opinions of Dr. Peeples because they are contradicted by the opinions of another defense expert, Dr. Stieve, who is being offered to opine on the medical staff at the Southwest Arkansas Community Correction Center and the care provided to Plaintiff. Plaintiff contends that Dr. Peeples' opinions on these issues are cumulative. The Medical Defendants respond that Dr. Peeples is not being offered as a standard-of-care expert and, thus, he will not be asked to opine on that area. Accordingly, Plaintiff's motion should be granted to the extent that it seeks exclusion of Dr. Peeples' expert opinions on the standard of care at the Southwest Arkansas Community Correction Center.

**C. Opinions Based on Personal Recommendations**

Plaintiff asks the Court to exclude Dr. Peeples' causation opinions related to actions occurring prior to February 2016. Plaintiff argues that these opinions are not based on a medical standard of care but, rather, are based on Dr. Peeples' personal opinions as to whether Plaintiff should have undergone an elective foot amputation before his February 2016 incarceration. Plaintiff argues further that these opinions improperly attempt to shift blame on Plaintiff's pre-incarceration doctors and could confuse the jury regarding the standard of care he should have received before his incarceration.

The Medical Defendants disagree, arguing that Dr. Peeples' causation opinions are scientifically based, in part, on his review of Plaintiff's pre-incarceration medical records and diagnostic studies. In doing so, Dr. Peeples' opines that Plaintiff's ultimate foot amputation "is the expected result of the [Charcot foot] progress and years of self-neglect, not because he did not have shoes for a few days after incarceration." (ECF No. 117-1, p. 16). The Medical Defendants argue that this methodology for determining causation—looking at all of Plaintiff's medical records, including pre-claim records—is approved and recommended by the American Academy of Orthopedic Surgeons, and that Plaintiff has provided no argument that Dr. Peeples' causation opinions are based on unreliable

4

principles and methods or that the methodology was unreliably applied to the facts of this case.

The Court agrees with the Medical Defendants. Dr. Peeples' review of Plaintiff's pre-incarceration medical records appears in line with an accepted methodology in the field. Plaintiff's arguments attack the credibility and weight that Dr. Peeples' causation opinions should be given, but Plaintiff has not demonstrated that Dr. Peeples' causation opinions are irrelevant, that they were reached in an unreliable manner, or that they are untrustworthy. Moreover, Plaintiff has not shown that admission of Dr. Peeples' causation opinions would cause substantial prejudice by misleading the jury, justifying exclusion of the opinions under Federal Rule of Evidence 403. Plaintiff may address Dr. Peeples' examination of Plaintiff's pre-February 2016 medical records through skillful cross examination and presentation of evidence at trial.

**D. Opinions Related to Plaintiff's Family**

Plaintiff asks the Court to exclude Dr. Peeples' opinions that Plaintiff's family erred by failing to act sooner in order to remedy Plaintiff's medical condition. The Medical Defendants respond that Dr. Peeples will not be asked to opine on that area. Accordingly, Plaintiff's motion should be granted to the extent that it seeks exclusion of Dr. Peeples' expert opinions related to Plaintiff's family.

**E. Expert Rebuttal Opinions**

Following the death of one of his expert witnesses, the Court allowed Plaintiff to select a substitute expert. Plaintiff chose Lori Roscoe as his substitute expert. Separate Defendant Arnold then designated Dr. Peeples as a rebuttal expert to Roscoe. Subsequently, the Court held that Roscoe's expert opinions must be limited to whether Separate Defendant Arnold breached a correctional standard of care.[1]

---

[1] Plaintiff states in the instant motion that the Court limited Roscoe's opinions "to Warden Arnold and the administrator actions." (ECF No. 103, p. 8). Although this is irrelevant to resolving the instant motion, the Court wishes to note that it limited Roscoe's expert opinions solely to whether Separate Defendant Arnold breached a correctional standard of care. (ECF No. 94, pp. 9-10). The Court expressly prohibited Roscoe from offering expert opinions on whether any Defendant breached an administrative duty of care. (ECF No. 94, pp. 8-9). To the extent that Plaintiff suggests that Roscoe may offer expert opinions on an administrative duty of care, this is incorrect.

Plaintiff now asks that Dr. Peeples not be allowed to serve as a rebuttal expert to Roscoe because he admitted in his deposition that he has no opinions as to the constitutional duty to provide healthcare to prisoners or as to prison administrative actions. The Medical Defendants state that they take no position on this request because it does not apply to them. Separate Defendant Arnold has not responded or requested an extension of time to respond, and his time to respond has passed. As such, Separate Defendant Arnold has waived any objection to the request. Accordingly, Plaintiff's motion should be granted to the extent that it seeks exclusion of Dr. Peeples as a rebuttal expert to Roscoe. *See* Local Rule 7.2(f) ("The failure to timely respond to any nondispositive motion . . . shall be an adequate basis, without more, for granting the relief sought in said motion.").

**F. Opinions Related to A1C Levels**

Plaintiff argues that Dr. Peeples should be prevented from offering expert opinions related to Plaintiff's A1C levels being an indication that he does not adequately control his Type 2 diabetes. Plaintiff argues that Dr. Peeples is unqualified to render an opinion on A1C levels because he testified that he does not know whether certain A1C levels are appropriate for a Type 2 diabetic and that he admitted he cannot determine whether A1C levels can rise despite following an appropriate diet.

The Medical Defendants disagree, arguing that Dr. Peeples did not testify that he did not know whether certain A1C levels were appropriate for a diabetic. The Medical Defendants state that Dr. Peeples is not offered as an expert on A1C levels but he is qualified and should be allowed to testify that highly elevated A1C levels can affect a diabetic's Charcot foot. This is part of Dr. Peeples' analysis in forming his causation opinions, according to the Medical Defendants.

The Court finds that Plaintiff has not shown that Dr. Peeples is unqualified to opine on A1C levels. The Court does not believe that the deposition testimony Plaintiff cites to shows that Dr. Peeples lacks knowledge or expertise to discuss A1C levels. He does not testify on the cited pages that he "does not know the difference between whether an A1C below 8 and above 7 is considered an appropriate A1C for a Type 2 diabetic." He likewise does not state that he cannot determine whether

A1C levels can rise despite adherence to a proper diet, as he concedes that this is possible.

The Medical Defendants state that Dr. Peeples is not presented as an expert on A1C, but that A1C levels play a role in forming his causation opinions, as they suggest that he was not properly managing his diabetes, which negatively affected his foot. Plaintiff has not demonstrated that Dr. Peeples' causation opinions are irrelevant, that they were reached in an unreliable manner, or that they are untrustworthy. Plaintiff may challenge the credibility and weight that should be given to Dr. Peeples' A1C opinions on cross examination.

## III. CONCLUSION

For the above-discussed reasons, Plaintiff's Motion to Exclude Expert Testimony of Dr. Earl Peeples (ECF No. 102) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. Dr. Peeples may not give expert opinions related to the following subjects: correctional healthcare providers, the standard of care at the Southwest Arkansas Community Correction Center, and the actions of Plaintiff's family. Dr. Peeples may not serve as a rebuttal expert to Lori Roscoe. Dr. Peeples may give expert causation opinions and may discuss the role Plaintiff's A1C levels played in forming the causation opinions.

**IT IS SO ORDERED**, this 3rd day of March, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge