

Transcript of the Testimony of
# LORENE LOMAX, M.D.

# Date: NOVEMBER 16, 2018

Re: SHIPP VS. CORRECT CARE SOLUTIONS, LLC, ET AL

CONWAY COURT REPORTING, LLC
Phone:501-679-1488
Email:scheduling@conwaycourtreporting.com
Internet: www.conwaycourtreporting.com

Page 17

1   **was observed?**

2   A    I don't know the answer to that.

3   **Q    Do you know which individuals observed him?**

4   A    I really don't.  I just saw that several nurses documented

5   a pattern that he was not.  The other thing that the nurses

6   documented, that his wounds had drainage in them, but he would

7   sometimes go and -- he was supposed to wait and take his

8   showers until before he was going to have his dressings done.

9   And sometimes he wouldn't do that, and so then he would be

10  walking around with a soddened dressing, you know, and that's

11  less than optimal for healing him.

12  **Q    Do you know if he gets to choose when he has showers?**

13  A    I don't know the answer to that.  That's a good point.  I

14  really don't know the answer to that.  And, like I said, given

15  the circumstances that people find themselves in, I'm not a

16  person that likes to blame patients.

17  **Q    Right.  You're not overly critical of him of having these**

18  **moments where he potentially was not compliant?**

19  A    It's a difficult circumstance.  And he's a person that

20  also, you know, struggles with being an alcoholic and being

21  isolated from family and those kind of things.  And then with

22  this other medical challenge on top of it, I had some empathy

23  for him.

24  **Q    On February 16th, did he seem concerned about his feet?**

25  A    Yes, he did.

1  Q   Was he generally concerned about his feet?
2  A   He was.
3  Q   Was he someone who you think wanted to keep both of his
4  feet?
5  A   Yes.
6  Q   Did you know that he had his right foot ultimately
7  amputated?
8  A   Well, I knew that after -- that was, you know, after I saw
9  him, but I -- yes, I know that now.
10 Q   Are you going to provide any opinions at trial that the
11 amputation was caused by his actions versus just a general
12 wound progressing?
13 A   I don't have any way of knowing that.
14 Q   You haven't been asked to review his full records?
15 A   I have not seen his full records subsequent to his
16 discharge.
17 Q   Would you ever refuse to document an encounter with the
18 patient because there's too much liability?
19 A   No, sir.
20 Q   In those situations, would you want to document what you
21 saw and what you did in order to prevent liability?
22 A   Generally, yes, sir.
23 Q   Do you think failing to document something intentionally
24 is fraud?
25 A   Could you clarify that?  Are you referring to Dr. Lemdja's