LENORA PHILSON - 3/29/2019

---

### Page 1

```
           UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF ARKANSAS
                TEXARKANA DIVISION
CRAIG SHIPP                              PLAINTIFF
           CASE NO. 4:18-CV-04017-SOH
v.

KIMBERLY HOFFMAN, et al.                DEFENDANTS


        ******************************************

                  ORAL DEPOSITION
                        OF
                  LENORA PHILSON
                  MARCH 29, 2019
                     VOLUME 1

        ******************************************
```

    ORAL DEPOSITION OF LENORA PHILSON, produced as a witness at the instance of the PLAINTIFF, CRAIG SHIPP, and duly sworn, was taken in the above-styled and numbered cause on the 29th day of March, 2019, from 12:58 p.m. to 1:59 p.m., before LEICA TURNER, a Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the offices of Leigh & Associates Court Reporting, 3930 Galleria Oaks Drive, Suite 159, Texarkana, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

---

### Page 2

**A P P E A R A N C E S**

FOR THE PLAINTIFF CRAIG SHIPP:
  MR. DEREK S. FRANSEEN
      WALSH & FRANSEEN
      200 East 10th Street Plaza
      Edmond, Oklahoma  73034
      Phone:  405.843.7600
      Fax:    405.606.7050
      dfranseen@walshlawok.com

FOR THE MEDICAL DEFENDANTS:
  MS. MICHELLE BANKS ODUM
      HUMPHRIES, ODUM & EUBANKS
      1901 Broadway Street
      Little Rock, Arkansas  72206
      Phone:  501.420.1776
      michelle@humphrieslaw.net

FOR THE ADC DEFENDANTS:
  MS. ROSALYN MIDDLETON
      ASSISTANT ATTORNEY GENERAL
      CIVIL DEPARTMENT
      323 Center Street
      Suite 200
      Little Rock, Arkansas  72201
      Phone:  501.682.8122
      Fax:    501.682.2591
      rosalyn.middleton@arkansasag.gov

---

### Page 3

**I N D E X**

WITNESS:  LENORA PHILSON

|  | PAGE |
|---|---|
| Appearances ......................................... | 2 |
| Changes and Signature ............................ | 46 |
| Reporter's Certificates ......................... | 48 |
| Examination by Mr. Franseen ..................... | 5 |
| Examination by Ms. Odum ......................... | 41 |
| Examination by Mr. Franseen ..................... | 44 |

---

### Page 4

**E X H I B I T   I N D E X**

| EXHIBIT NO. | DESCRIPTION | PAGE MARKED |
|---|---|---|
| 1 | Email, 2/16/16, from Lenora Turner to Stephen Arnold, Subj: Resident Craig Shipp (Bates CCS-Requests Complaints Other 0018) | 18 |
| 2 | Medical Restrictions/Limitations/ Special Authorization(s) (Bates CCS 788) | 18 |
| 3 | Email between Jeffrey Stieve and Lenora Turner and Kim Hofmann Re: Resident Craig Ship (Bates CCS-Requests Complaints Other 0024 - 0025) | 29 |
| 4 | Email String between Lenora Turner and Stephen Arnold, 2/16/16, Re: Resident Craig Shipp (Bates CCS-Requests Complaints Other 0019) | 32 |
| 5 | Request Form (Bates CCS-Requests Complaints Other 0026) | 44 |

---

21

Q. The warden says refer to Medical and says he sent it to Medical and you received that document. What are you supposed to do with that?
A. Okay. That's a conversation I would have with the warden.
Q. Okay. What kind of conversation would you have?
A. Okay. First of all, I would have to look into the record to see exactly what was going on as far as the shoes and what the doctor had documented. So I know that I would go in first of all and look at the record and see exactly is there a medical necessity, what the doctor had said about the shoes, about the foot, if the documentation is there. And no matter what the documentation says, I'm still going to follow back up with the warden on that request because that's something we did routinely is follow back up. Any time he gives me something, there was always close follow-up.
Q. How would you follow up?
A. It all depends. I mean, sometimes I will talk to him, I'd go to his office quite a bit, I would e-mail, I would call, sometimes he would come to my office.
Q. So you would agree before February 16, 2016, you had not notified Mr. Warden that Mr. Shipp needed

22

orthotic shoes?
A. I'm not agreeing to that. I just said I can't recall.
Q. You don't have any memory of doing that?
A. I don't recall.
Q. Do you recall looking at Mr. Shipp's records prior to February 16, 2016?
A. Looking at his records?
Q. To see whether he needed orthotic shoes, whether they were approved or not?
A. Prior to February 16th?
Q. Yes.
A. I don't remember, sorry.
Q. On Exhibit 2 there, is that the document that would be filled out by a doctor approving a medical device?
A. It appears to be.
Q. So that would have to be filled out by a doctor in order for a medical device to be approved to come into the facility by Medical and the warden?
A. It looks like that is one form.
Q. And so in order for a resident to get their medical prescribed device, that document had to be filled out, you would have to be notified, and the warden would have to approve it?

23

A. Sounds pretty accurate.
Q. Is there anything prohibiting a doctor from filling out that type of form prior to an intake physical if they have an encounter with the resident?
A. I can't answer that. That would be up to the physician.
Q. Why is it up to the physician whether they can fill out a form or not?
A. That would be their discretion.
Q. So it's at their discretion so there's nothing prohibiting them from using their discretion in filling out that form approving a device if it's brought to their attention?
A. I wouldn't think so.
Q. You wouldn't want a policy in place that prohibits them from using their discretion, would you?
A. I don't make the policies.
Q. But as an administrator there, you want to have policies in place that are in the best interest of the residents regarding their healthcare?
A. Well, the policies are in place and that's what we do, follow the policy.
Q. So is there a policy that you're aware of that prohibits a doctor from exercising their discretion in filling out that form during an encounter once they're

24

aware that a resident does not have their medically prescribed device?
A. I'm not aware of any policies.
Q. Do you agree that a nurse can't notify you that a resident needs a outside medical device without a doctor filling out such an order?
A. Can you repeat that question?
Q. Is there anything regarding the policies and procedures that prohibits a nurse from notifying you that a resident needs an outside medically prescribed device without a doctor's order?
A. I don't recall anything in the policy about that.
Q. Do you know whether the nursing staff follows such a policy in February 2016 in that manner?
A. Follows such a policy about what? I'm sorry.
Q. About not notifying the health service administrator until the doctor fills out an order.
A. Your question was is there anything in the policy?
Q. Do you know whether the nursing staff would have followed that policy, that they would wait until a doctor filled out an order before they notified the HSA regarding the need for an outside device to be approved?